## EDGAR G. BAUM
### v.
## JOHN GAFFY, INTERPLEADED, ETC.

*Levy of Execution on Crops—Lien of Landlord on Same—Bill of Interpleader — Colorable Transfer — Evidence Insufficient to Support Decree.*

A debtor transferred real estate to a person who leased the same back to his vendor, and thereafter a judgment creditor levied upon crops

grown by the tenant; upon a bill of interpleader filed to determine the priority of lien between the landlord and the judgment creditor, this court holds that the evidence was insufficient to support the finding of the court below that the transfer to the landlord was merely colorable, and that the landlord was entitled to the proceeds of the crops as against the claimant under the execution.

[Opinion filed May 20, 1892.]

APPEAL from the Circuit Court of Whiteside County; the Hon. JOHN D. CRABTREE, Judge, presiding.

Messrs. J. & J. DINSMOOR, for appellant.

Mr. J. E. McPHERRAN, for Gaffy, appellee.

MR. JUSTICE CARTWRIGHT.   John Gaffy recovered a judgment June 5, 1889, against John Murphy for $345.84 and costs.   Execution was issued on the judgment and was levied October 1, 1889, on crops grown on the southwest quarter of section 36 in the town of Hume, Whiteside County, Illinois, and also on chattels thereon, as the property of John Murphy.   Edgar G. Baum, claiming to be owner of the premises whereon the crops were growing and had grown, issued a distress warrant as landlord of Murphy for rent alleged to be due him and unpaid, to the amount of $375, and delivered the warrant to the officer holding the execution.   An order was obtained from the master in chancery for the sale of the property distrained, and the deposit of the money arising from the sale with the clerk of the court.   There was a sale of the property levied upon and distrained, and thereafter Edgar G. Baum caused the case of John Gaffy against John Murphy, wherein judgment was rendered, to be re-docketed, and made a motion to vacate the levy upon the crops.   The court ordered the sheriff to hold the money in his hands and to file a bill of interpleader against Baum and Gaffy.   In pursuance of this direction the sheriff, George G. Keefer, filed his bill of interpleader for the purpose of compelling the claimants to litigate their rights to the fund arising from the sales.   The court decreed that the bill was properly filed, and required

Baum and Gaffy to interplead, and dismissed the sheriff with his costs, upon payment of the money into the hands of the clerk of the court. The cause·was referred to the master in chancery to inquire and report to the court upon written statements of the claims of the parties to be presented to the master on oath. The master took testimony and made findings, to which Baum objected, and his objection being overruled and the report filed, he excepted thereto. The exceptions were overruled by the court and a decree was entered by which the court gave to Baum the proceeds of property levied on under the distress warrant not levied on under the execution, and gave to Gaffy the rest of the proceeds, including the moneys arising from the sale of crops levied on under the distress warrant. From this decree Baum appeals to this court.

It is first objected that a bill of interpleader would not lie in such a case. The decree finding that the bill was properly filed, and discharging the sheriff, was not appealed from, but appellant interpleaded with Gaffy in pursuance of that decree, and the propriety of the bill of interpleader can not now be questioned.

The premises in question were conveyed June 16, 1888, by John Murphy and wife to Edgar G. Baum, and the deed was recorded June 25, 1888. On June 16, 1888, Baum executed a lease of the same premises to John Murphy until January 1, 1894, at an annual rental of $375. The first payment of $375 being due January 1, 1889, was unpaid at the time of the issue of the distress warrant and the sale thereunder. The master found that this deed of conveyance from John Murphy and wife to Baum was colorable and in fraud of the rights of existing creditors, and that the lien on the crops sought to be enforced by Baum as landlord of Murphy should not be permitted to be so enforced as against Gaffy, and in so finding the master was sustained by the court. There was included in the conveyance to Baum a tract of ninety-six acres, which was subject to a mortgage of $1,000. The lands embraced in the conveyance contained two hundred and fifty-six acres. Baum paid $4,100 at the time of the conveyance, and afterward paid

the above mentioned $1,000 mortgage. The $4,100 was mainly paid in discharging a mortgage and judgment liens on the property, the amount of cash paid to Murphy being $103.71 only. The claim that this conveyance was colorable, merely, and fraudulent as to creditors, is based upon evidence that Murphy was considerably indebted at the time, as shown by these mortgages and judgments and by his giving a chattel mortgage and making a conveyance soon after to another party; that Baum had stated to Gaffy that he had given a contract back to Murphy providing that when Murphy should pay him $1,100, he would reconvey to Murphy's wife and take a mortgage for $3,100 to secure himself; that Murphy had executed a lease of the ninety-six acres to one Scott, and that when Murphy was trying to procure a windmill he proposed to give a note of his wife, and stated that Baum had agreed to reconvey the premises to his wife when matters were fixed with Baum. Both Baum and Murphy testified that the deed was absolute and that no contract or agreement to reconvey was made, and both denied having any conversation such as stated. Mrs. Murphy testified that she had no contract with Baum in relation to the land. Scott testified that he paid the rent for the ninety-six acres at the Tampico bank, and Baum testified that he sent the lease there for collection and got the money. The testimony is that the two hundred and fifty-six acres were worth from $20 to $30 per acre, and the price for the whole title was $5,100. The suit by Gaffy against Murphy was commenced in October, 1888, several months after the conveyance, and there is no evidence that Baum knew of the Gaffy debt when he took the deed.

The witnesses were all examined orally before the master, and such weight is to be given to his conclusions, touching their credibility, as his superior opportunities for judging of them in that respect would require. There was also much conflicting testimony of an impeaching character as to each of the parties, Baum and Gaffy. Under these circumstances, if we consider all the competent evidence on the part of Gaffy as true, as against contradictory evidence on

the part of Baum, the utmost that can be claimed for it is, that Baum advanced to Murphy, who was financially embarrassed, the sum of $4,100, almost wholly by payment of obligations of Murphy, and took a conveyance of land with an agreement that in case $1,100 should be paid to him, a deed should be made to Murphy's wife, and Baum retain a lien for the balance.

The evidence of Murphy's statement after the conveyance, and in the absence of Baum, was incompetent, and the alleged conversation with Gaffy was after Baum had paid the $4,100, and before he had paid the mortgage of $1,000 on the ninety-six acres. The evidence goes no further than to show Baum to be a mortgagee, if it goes that far. Ordinarily there must be an indebtedness secured in order to create the relation of mortgagor and mortgagee.

There is no evidence of anything in the nature of an indebtedness by Murphy to Baum for the money so paid, or any obligation or promise to repay the same to him, but at most only an option to do so. There was no evidence of any agreement that Baum could enforce against any person. Baum paid his money to creditors, and there is no evidence of fraud which would justify depriving him of the money so paid. If the alleged arrangement existed and should ever be carried out, Baum was to be paid part of his advances and secured as to the balance. If it be admitted that the parties occupied the relation of mortgagor and mortgagee, or that there was an option to repay advances made, we know of no reason why they could not assume the relation of landlord and tenant, as was done. We see no objection to the mortgagee in possession leasing the premises to the mortgagor as well as to any other person, and in that event the landlord would have a lien on the crops which he could enforce by distress.

We think the evidence on the part of Gaffy insufficient to support the decree, and that Baum was entitled to a lien on the crops, and the proceeds of the sale of crops levied on should have been awarded to him. The decree will be reversed and the cause remanded.

*Reversed and remanded.*